PHILLIPS B. COLEMAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

ALEXANDER COLEMAN *vs.* SAME.

Suffolk. March 13, 1924. — May 21, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Street railway: construction of folding step; Res ipsa loquitur. *Evidence*, Presumptions and burden of proof.

At the trial of an action against a street railway company for personal injuries received as the plaintiff was alighting from a semiconvertible car of the defendant having two steps, the lower one of which was a folding step, and caused by the plaintiff's foot becoming caught between the tread of the lower step and the riser between that step and the one next above, upon a consideration of evidence most favorable to the plaintiff, it was *held*, that

(1) A finding was not warranted that the construction of the steps of the car was mechanically defective or improper, nor that the space between the tread and the riser was greater than reasonably required in raising and lowering the lower step;

(2) A verdict for the plaintiff was not warranted;

(3) The doctrine of *res ipsa loquitur* was not applicable.

TWO ACTIONS OF TORT, the first action being for personal injuries alleged to have been received, as the plaintiff was alighting from a street car operated by the defendant, by reason of the careless and negligent manner in which the car was operated, and by reason of the defective and dangerous condition of the car and the step appurtenant thereto, his foot having become caught in the step, causing him to fall and break his leg. The second action was by the father of the plaintiff in the first action for consequential damages. Writs dated June 30 and August 6, 1921, respectively.

In the Superior Court, the actions were tried together

before *Raymond,* J.    Material evidence and a special finding
by the jury are described in the opinion.    At the close of
the evidence, the defendant moved that verdicts be ordered
in its favor.    The motions were denied.    There were verdicts
for the plaintiff in the first action in the sum of $2,250, and
for the plaintiff in the second action in the sum of $711.    The
defendant alleged exceptions.

*G. Hoague,* for the defendant.

*E. J. Sullivan,* (*T. Allen, Jr.,* with him,) for the plaintiffs.

CROSBY, J.    The first of these actions is brought by a
minor, to recover for personal injuries received by him while
alighting from one of the defendant's cars; the second is by
his father to recover for medical and other expenses incurred
on account of such injuries.

The plaintiff in the first case (hereinafter referred to as
the plaintiff), accompanied by his mother, was in the act
of alighting from one of the defendant's cars when his shoe
became caught between the tread of the lower step and the
riser between that step and the one next above, throwing
him to the ground and breaking his leg.    There was evidence
sufficient to warrant a finding that he was in the exercise
of due care, and the only question before us is whether there
was any evidence of negligence on the part of the defendant.

One Brewster, supervisor of surface car equipment in
the employ of the defendant, called as a witness by the
plaintiff, testified that the car in question is known as a
" semi-convertible No. 3," with manually operated doors;
that there were two steps, the bottom one a folding step, and
the one above fixed or stationary; that the treads were of
hard wood; that the riser or toe guard between the first and
second step is made of sheet iron about one sixteenth of an
inch thick.    He thus described the mechanism of the steps:
" There are hangers that come down from the platform of
the car with a loop on the end and the edge of the step runs
from this loop, and there is a lever connected with the end
of the step to the rod which is used in raising or lowering
the bottom step.    There is a one quarter inch wire spring
on this rod extending about one half inch on either side of
it, the function of which is to keep the step folded in position

when it is up.  The rod is about one inch in diameter and comes between the step and the toe guard.  The bottom edge of the toe guard comes pretty nearly to the upper surface of the step.  The rod fills up the space between the step and the toe guard.  The distance between the lower edge of the toe guard and the innermost edge of the step, disregarding the rod, is about one and one half inch." It also appeared that on the back of the toe guard or riser at the bottom edge there was a strip of iron about one inch wide and three eighths to one quarter inch thick, which is called a "stiffener."  There was other evidence tending to show that the space between the top of the lower step and the toe guard was from two to three inches; that it was necessary to have a space of at least one inch and a half between the lower edge of the toe guard and the inner edge of the tread to allow for the hinges and for the operation of the rod with the spring upon it.

At the trial it was the contention of the plaintiff that the defendant could be found to have been negligent because of the space between the riser and the back of the step when in a normal condition; and also because the riser, at the time of the accident, was bent in or dented so as to make the space between the riser and the tread wider than usual.  As to the latter contention, the jury found, in answer to a special question submitted to them, that the riser was not bent in or dented.  The question then is, whether a finding of negligence was warranted solely because of the space between the riser and the back of the tread.  It is obvious from all the testimony that, as the plaintiff stepped down upon the lower step, his shoe became caught between the riser and the tread and, in view of the finding of the jury, this must have occurred when the tread and riser were in the same condition as when originally constructed.

The undisputed testimony shows that a large number of cars in use by the defendant had steps of the same construction; that this type of car had been in use by the defendant since January, 1908, and that, so far as known, no person before had caught his heel in the step of a car of this construction; that the cars were inspected every five hundred

miles, and a car in daily use was so inspected on an average of from three or four to five or six days; that cars of this type are in use by other street railway companies; and that three well known companies have built the same type of cars for the defendant and for other street railway companies all over the country.

The defendant, as a common carrier of passengers, was bound to furnish safe and suitable cars for the conveyance of its passengers.   Upon consideration of the evidence most favorable to the plaintiff, a finding was not warranted that the construction of the steps of the car was mechanically defective or improper, nor that the space between the tread and the riser was greater than reasonably required in raising and lowering the bottom step.   It does not appear, from the extensive use of cars of this kind by the defendant, that an injury to a passenger was likely to happen and should have been foreseen and guarded against.   However free from fault the plaintiff may have been, a verdict in his favor was not warranted in the absence of affirmative evidence of negligence.   We are unable to discover any such evidence.   *Adduci* v. *Boston Elevated Railway*, 215 Mass. 336.   *Perkins* v. *Bay State Street Railway*, 223 Mass. 235.   *Kinnarney* v. *Milford & Uxbridge Street Railway*, 241 Mass. 127.

As negligence of the defendant could not be inferred from the accident, the doctrine of *res ipsa loquitur* is not applicable. *Carney* v. *Boston Elevated Railway*, 212 Mass. 179.   *Baglio* v. *Director General of Railroads*, 243 Mass. 203.

In each case the exception of the defendant to the refusal to direct a verdict in its favor must be sustained; and in accordance with G. L. c. 231, § 122, judgment is to be entered for the defendant.

*So ordered.*